Willitts *v.* Roman Catholic Archbishop of Boston.

LESLEE A. WILLITTS *vs.* ROMAN CATHOLIC ARCHBISHOP OF BOSTON & another.[1]

Middlesex. September 9, 1991. - November 18, 1991.

Present: LIACOS, C.J., NOLAN, O'CONNOR, & GREANEY, JJ.

*Contract*, Employment, Construction of contract, Termination. *Employment*, Termination. *Public Policy*. *Civil Rights*, Termination of employment, Coercion.

A school teacher's written contract of employment, covering a one-year school term and explicitly stating its expiration date, was not automatically renewed for a subsequent term by the school's failure to follow its written policy, incorporated in the contract by reference, that, in the event of a contract not being renewed, the teacher "should be formally notified of [the] decision by April 15." [206-208]

Where a form of contract for a teacher's employment at a religious school, consistent with the employer's written policies incorporated in the contract by reference, contained signature lines for both the principal of the school and the pastor of the parish with which the school was affiliated, the pastor's signature alone was not sufficient to create a binding contract. [208-209]

An employer's decision not to renew a contract providing a definite period of employment, allegedly in consequence of the employee's attempt to form an association of her follow employees, was not actionable as a discharge for reasons contrary to public policy. [209-210]

A nonprofit school's decision not to renew a school teacher's contract providing a definite period of employment, allegedly in consequence of the teacher's attempt to form an association of her follow teachers, did not constitute "threats, intimidation, or coercion" intefering with her exercise of free speech or association rights, so as to be actionable under the State Civil Rights Act, G. L. c. 12, § 11H. [210-211]

CIVIL ACTION commenced in the Superior Court Department on November 30, 1988.

---

[1] St. Tarcisius School.

The case was heard by *David M. Roseman*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James F. Lamond* for the plaintiff.

*Richard W. Murphy* (*Thomas J. Hobin, Jr., & Jon R. Maddox* with him) for the defendants.

GREANEY, J. The plaintiff, Leslee A. Willitts, brought this action in the Superior Court against the defendants, the Roman Catholic Archbishop of Boston and St. Tarcisius School (school), claiming that the school had unlawfully terminated her employment. Her complaint sought declaratory relief under G. L. c. 231A (1990 ed.), and damages on the basis of alleged breach of contract, termination of employment in disregard of public policy, and violation of the State Civil Rights Act, G. L. c. 12, § 11I (1990 ed.). Both the plaintiff and the defendants moved for summary judgment pursuant to Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974). A judge of the Superior Court allowed the defendants' motion, and judgment entered for the defendants. The plaintiff appealed. We transferred the case to this court on our own motion. We affirm the judgment of the Superior Court.

Summary judgment "shall be rendered . . . [if] there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). In setting out the facts from the documents, affidavits and depositions in the record, we resolve any conflicts in the summary judgment materials, and we make all logically permissible inferences, in the plaintiff's favor. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983).

St. Tarcisius School is an elementary school affiliated with Saint Tarcisius Church of Framingham, a Roman Catholic church. The plaintiff worked there as a kindergarten teacher from September, 1980, until June, 1987. Her employment was governed by yearly written contracts, each covering one school-year term. Each contract set forth the terms of em-

ployment for the upcoming school year, including beginning and ending dates, and contained signature lines for the teacher, the principal of the school, and the parish pastor. The contract incorporated by reference the "Regulations and directives of the Archdiocese Department of Education," from the *Policy Book for Catholic Schools* (Directives), a guide to the administration of parish schools published by the archdiocese of Boston. The school's practice for renewing the contracts of its teaching staff was to conduct a yearly performance review in the spring and at that time to present the teacher with a contract for the upcoming school year.

In keeping with this procedure, the plaintiff met with the principal of the school, Sister Rita Welch, on March 31, 1987, to receive her annual performance review and her contract for the 1987-1988 school year. Her performance review was uniformly positive. During the meeting, she signed the contract, which had already been signed by Father Alfred Almonte, the pastor of the church, and returned it to Sister Welch. The plaintiff mentioned to Sister Welch that she had applied for a teaching position in the Framingham public schools, but had not received an offer as of that time and was therefore not pursuing any other positions. In response to this disclosure, Sister Welch said that she could not sign the contract under the circumstances and told the plaintiff that she had until May 31 to decide whether or not to return to the school. The plaintiff told Sister Welch that she had already decided to stay at St. Tarcisius, and she left the meeting with the understanding that she would meet again with Sister Welch before May 31 to reaffirm her intention to remain at St. Tarcisius for the next school year.

While employed at St. Tarcisius, the plaintiff had attended meetings of the Boston Archdiocesan Teachers' Association, which represented teachers at some of the archdiocesan high schools in collective bargaining. She became interested in forming a teachers' association at her school in order to address issues of concern to the faculty there. On May 22, 1987, she posted a notice in the teachers' lounge· at the school, calling for a meeting of the teachers to discuss vari-

ous matters, including collective bargaining. The notice included statements from authorities in the Roman Catholic Church in support of the rights of workers to organize and to bargain collectively. On the same date, the plaintiff distributed a memorandum to the teachers announcing the date and time of the meeting and stating as its objective "the airing of views, ideas and concerns" toward the end of "establishing direction towards a 'just' teaching atmosphere."[2]

After learning of the notice that the plaintiff had posted in the teachers' lounge, Sister Welch and Father Almonte called a meeting of all the teachers on May 29, 1987, to discuss it. At that meeting, Father Almonte referred to problems that another school was experiencing because of union organization, and he declined Willitts' offer to arrange a meeting with a group of concerned teachers. In response to the plaintiff's comment that there were "discrepancies" in the working conditions at the school which in her opinion should be dealt with, Father Almonte said that her proposed topics of discussion all involved money, and that the school was at its financial limit. He told the teachers that if they were unhappy at the school, they should leave. He offered to release any teacher who wished to go, and he gave the teachers one week to reach a decision. At the end of the meeting, the plaintiff told Sister Welch that since she had already signed her contract for the forthcoming school year, she had already made up her mind. Sister Welch informed her that she (Welch) would not sign the contract "under these conditions."

At a subsequent meeting on June 8, 1987, Sister Welch criticized the plaintiff for her attempt to organize the teachers. She offered to renew the plaintiff's contract, but only on the condition that the plaintiff refrain from such efforts in the future. When the plaintiff refused to agree to that condition, Sister Welch, on behalf of the school, declined to renew her contract, which expired by its terms on June 30, 1987.

---

[2]There is no indication in the record that the meeting the plaintiff proposed was ever held.

Following the school's decision, the plaintiff requested both the National Labor Relations Board (board) and the Massachusetts Labor Relations Commission (commission) to pursue an unfair labor practice charge on her behalf. The board declined to do so on the ground that it lacked jurisdiction over the school.[3] The commission also dismissed the plaintiff's claim on the ground that, as a professional employee of a nonprofit institution, she was not covered by G. L. c. 150A, § 2, which protects the rights of workers to organize and to bargain collectively. No appeal was taken by the plaintiff from either of these decisions and her complaint to the Superior Court followed.

1. *Breach of contract.*[4] The plaintiff advances two theories in support of her contention that, despite Sister Welch's refusal to sign the contract, she held a valid employment contract for the 1987-1988 school year. She first argues that her contract with the school for 1986-1987 was automatically renewed for the following year by the school's failure to follow its own provisions for the notification of teachers whose contracts are not to be renewed.

Section 4420(3) of the Directives, which are incorporated by reference into the school's contracts with its teachers, specifies that "[t]he teacher should be informed prior to February 15 that because of unsatisfactory performance, there is a possibility that the contract might not be renewed. The teachers should be formally notified of a decision prior to

---

[3]Citing *NLRB* v. *Catholic Bishop of Chicago,* 440 U.S. 490 (1979), the board concluded, among other things, that because "St. Tarcisius School is a Catholic School whose purpose and function in substantial part is to propagate a religious faith and whose primary purpose is the religious education of students," the board lacked jurisdiction over the school.

[4]In reaching the merits of the plaintiff's claims, we reject the school's argument that the claims are beyond the subject matter jurisdiction of the civil courts because the issues raised involve " 'matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law,' " see *Madsen* v. *Erwin,* 395 Mass. 715, 723 (1985), quoting *Serbian E. Orthodox Diocese* v. *Milivojevich,* 426 U.S. 696, 713 (1976). We conclude, as did the judge, that the plaintiff's claims deal with secular matters, founded on the interpretation of constitutional, common and statutory law, and thus fall within the jurisdiction of the courts to determine.

April 15, so that opportunities to seek other employment will not be lost." Relying on this provision, the plaintiff argues that the school's failure to follow its own notice provisions resulted in the automatic renewal of her contract for the following school year, and that the school committed a breach of this contract by terminating her employment. We reject this claim.

First, neither the contract itself nor the Directives state that failure by the school to follow the provisions of § 4420(2) results in automatic renewal of a teacher's contract.[5] Furthermore, the word "should," as used in that provision of the Directives, is merely advisory rather than mandatory language;[6] its purpose is to facilitate whenever possible the employment search of a teacher whose contract the school does not intend to renew.[7] To interpret this provision of the Directives as the plaintiff does would render the school powerless to avoid rehiring a teacher where the basis for the decision not to rehire arose, as it did in this case, after April 15. Such an interpretation would contradict the letter of the contract, which contained definite beginning and ending dates, and which stated "[t]his agreement expires on June 30, 1987 un-

---

[5]To the extent that the cases cited by the plaintiff in support of this argument rely on G. L. c. 71, §41 (1990 ed.), they are inapposite, since that statute, which provides for automatic renewal of the appointments of certain public school teachers where notification requirements are not met, is inapplicable to a contract between private parties of the type involved in this case.

[6]Black's Law Dictionary 1379 (6th ed. 1990), defines the word "should" as follows: "The past tense of shall; ordinarily implying duty or obligation; although usually no more than an obligation of propriety or expediency, or a moral obligation, thereby distinguishing it from 'ought.' It is not normally synonymous with 'may,' and although often interchangeable with the word 'would,' it does not ordinarily express certainty as 'will' sometimes does."

[7]The school also argues that § 4420(2) of the Directives is inapplicable in this case because it applies only to the nonrenewal of contracts on the ground of "unsatisfactory performance," and there is no dispute that the plaintiff performed her teaching duties in a satisfactory manner. Because we reject the plaintiff's argument on other grounds, we need not decide whether her union organization efforts could properly be categorized as "unsatisfactory performance."

less definitely renewed." "The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 375 (1933). *Ucello* v. *Cosentino*, 354 Mass. 48, 51 (1968). *Lydon* v. *Allstate Ins. Co.*, 5 Mass. App. Ct. 771 (1977). We therefore reject the plaintiff's argument that a contract was formed automatically when, on April 15, the school failed to notify the plaintiff that her contract was not to be renewed.[8] "Expectations and negotiations fall far short of a binding agreement." *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Ass'n*, 211 Mass. 398, 405 (1912). *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.*, 312 Mass. 501, 506 (1942), and cases cited.

The plaintiff argues in the alternative that a binding agreement was formed on the date of her performance review, when she signed the contract that had previously been signed by Father Almonte. Although Sister Welch had not yet signed the contract, her signature was not required, the plaintiff claims, because only the parish pastor had authority to enter contracts with the teachers. Relying on § 4120 of the Directives, which states that "the final contracting of the teacher should be the responsibility of the pastor who may delegate this responsibility to the principal," the plaintiff argues that nothing in the record indicates that Father Almonte had in fact delegated this responsibility, and so his signature alone was sufficient to bind the school. We disagree.

The contract contains a signature line for the principal, and all previous contracts between the parties contained her signature, in keeping with § 2200 of the Directives which designates the principal as "the administrative head of the school." "Effect is to be given if possible to every word of an

---

[8]Moreover, the conduct of the parties shows that neither treated the contract as automatically renewed on April 15. The plaintiff informed Sister Welch on May 29 of her intention to remain at the school, and at their meeting on June 8, Sister Welch extended a conditional offer of employment, which the plaintiff rejected.

instrument and to every signature upon it." *Gloucester Mut. Fishing Ins. Co.* v. *Boyer*, 294 Mass. 35, 39 (1936). Summary judgment was properly granted in favor of the defendants on the plaintiff's claim of breach of contract.

2. *Termination in violation of public policy.* The plaintiff argues that, even if the school was not contractually bound to employ her for the 1987-1988 term, it nevertheless was prohibited from terminating her employment for reasons that violate public policy. See *DeRose* v. *Putnam Management Co.*, 398 Mass. 205, 210 (1986); *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-151 (1989); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810-812 (1991).

The common law doctrine granting an employee a cause of action for wrongful discharge, if the reason for the discharge is contrary to public policy, is limited to at-will employees. Because the plaintiff's employment contract contained a definite period of employment, she was not an employee at will. See *Jackson* v. *Action for Boston Community Dev. Inc.*, 403 Mass. 8, 9 (1988), and cases cited. And because she was not an employee at will, the school's decision not to renew her contract did not constitute termination actionable under the public policy exception stated in the *DeRose* decision, *supra*. The plaintiff would extend that exception to employees under contract for a term; we decline to do so.[9] The school's decision not to reappoint the plaintiff was simply a determination, within its complete discretion, to discontinue a relationship that had expired by the terms of the contract, and is not conduct actionable under the public policy exception to the at-will employment doctrine. Summary judgment was properly granted for the defendants on this claim.

---

[9]The plaintiff cites to no authority in support of her argument that the public policy exception should apply to employees under contract for a term. Because G. L. c. 150A is inapplicable to professional employees of nonprofit corporations, the plaintiff had no "legally guaranteed right" that could serve as the basis for a public policy exception in this case. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, *supra* at 149-150.

3. *State Civil Rights Act claim.* The plaintiff's final claim is that the school's action. in ending her employment amounted to "threats, intimidation, or coercion" interfering with her rights to free speech and association in violation of G. L. c. 12, § 11I, the State Civil Rights Act. We do not agree.

That act provides a remedy when "any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth." G. L. c. 12, § 11H (1990 ed.) (incorporated into G. L. c. 12, § 11I).

As noted in *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719-720 (1989), relief under the Act may be granted where the "threat, intimidation or coercion" involves either a physical confrontation accompanied by a threat of harm, see *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 823 (1985); *Bell* v. *Mazza*, 394 Mass. 176, 183-184 (1985); *O'Connell* v. *Chasdi*, 400 Mass. 686, 687-688 (1987), or the loss of a contract right, see *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 95 (1987). Because the plaintiff did not have a contract for the 1987-1988 school year, the violation of the Act she alleges consists only in the defendant's failure to renew its contract with her. Such action by the school falls outside the scope of what we recognize as "threats, intimidation or coercion" required to state a claim under the Act.[10] In declining to continue the plaintiff's contract, the school exercised its discretion under the terms of employment it chose to offer its teachers. There was no improper interference by the defendant with a secured right.[11]

---

[10]See *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989), defining "threat" as "acts or language by which another is placed in fear of injury or damage," "intimidation" as "creation of fear to compel conduct," and "coercion" as "the active domination of another's will."

[11]As the judge noted in granting summary judgment, the Legislature had specifically exempted professional employees of nonprofit corporations

Summary judgment was therefore properly granted for the defendants on this claim. See *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 417-418 (1988). *Korb* v. *Raytheon Corp.*, 410 Mass. 581, 585 (1991). *Flesner* v. *Technical Communications Corp.*, *supra* at 818-819.

*Judgment affirmed.*

---

from coverage under G. L. c. 150A. We agree that it would be anomalous, on the facts of this case, to allow a remedy under the State Civil Rights Act where a legislative remedy was not made available under G. L. c. 150A.

The plaintiff cites *O'Connell* v. *Chasdi*, *supra* at 693 n.9, where a remedy was granted under the Act on the plaintiff's claim of sexual harassment despite the inapplicability to the defendant of the State anti-discrimination law, G. L. c. 151B. *O'Connell*, however, is distinguishable in that the reason for the inapplicability of the relevant statute was procedural — the employer had fewer than six employees. By contrast, the reason for the inapplicability of G. L. c. 150A to the plaintiff's claim is more clear and substantive — it represents a legislative determination to exclude professional employees working for nonprofit institutions from the statutory protection of G. L. c. 150A. We note also that the proscribed conduct in *O'Connell* (sexual harassment, including explicit physical contact) clearly involved "threats, intimidation or coercion."