COMMERCIAL UNION INSURANCE COMPANY *vs.* KEVIN M.
CONNORS,[1] & others,[2] interveners.

No. 95-P-1092.

Suffolk. December 11, 1996. - April 25, 1997.

Present: ARMSTRONG, PORADA, & FLANNERY, JJ.

*Insurance,* Motor vehicle insurance, Homeowner's insurance, Agent.
*Contract,* Insurance. *Motor Vehicle,* Insurance.

A thirty-day notice of cancellation clause in a policy of insurance did not
operate as an automatic renewal clause when the insurer did not give
such notice, where the insured had no intention of continuing coverage
beyond the policy term and had so informed the insurer. [541-543]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 24, 1994.

The case was heard by *Patrick J. King,* J., on motions for
summary judgment.

*Richard E. Wholley* for Mahoney & Wright Insurance
Agency, Inc.

*Edward F. O'Brien, Jr.,* for Kevin M. Connors.

*Richard L. Neumeier* for the plaintiff.

*Richard E. Quinby & Anthony D. Rizzotti* for Rogers &
Gray Insurance Agency, Inc., joined in a brief.

ARMSTRONG, J. On December 1, 1989, Jason Fedele drove
his parents' automobile head-on into another vehicle, killing
himself and seriously injuring the driver of the other vehicle,
Kevin M. Connors. Liability was established, and Connors
was paid $455,000 from the Fedeles' automobile insurance li-
ability coverage — an amount that apparently fell short of
Connors' actual damages. For further recovery, Connors
looks to an umbrella liability policy issued by Commercial

---

[1]Individually and as assignee of the estate of Jason Adam Fedele.

[2]Rogers & Gray Insurance Agency, Inc., and Mahoney & Wright Insur-
ance Agency, Inc.

Union Insurance Company (CU) to the Fedeles. The difficulty is that the umbrella policy period was December 1, 1988, to November 30, 1989 — it expired, that is, the day before the accident. Connors took the position in the trial court that the coverage remained in effect due to a provision in the policy that, if CU intended not to renew the coverage, it would send notice to that effect to the insured (i.e., the Fedeles) not less than thirty days prior to the end of the policy period. The judge allowed CU's motion for summary judgment. Connors, as well as two insurance agencies that acted for the Fedeles at various times, and who were the target of professional malpractice actions by the Fedeles that are still pending, appealed.

The judge predicated his ruling on the following facts, established by the summary judgment record. Until mid-1989 the Fedeles had purchased their casualty insurance coverages through the Rogers & Gray Insurance Agency, Inc., which had placed the Fedeles' automobile, boat, homeowners, and umbrella coverages with the plaintiff, CU. In the early summer of 1989, Stephen Fedele, Jason's father, decided to make new arrangements for insurance. He brought his CU policies to the Mahoney & Wright Insurance Agency, Inc., and that agency undertook to replace the CU policies with other insurance. As to the boat policy, Mahoney & Wright arranged for a replacement policy, written by Commerce Insurance Co. (Commerce), and for cancellation of the CU policy as of November 6, 1989. The automobile policy was replaced by a Commerce policy running from January 1, 1990.[3]

Two of the CU policies — the homeowners and the umbrella, were to expire November 30, 1989. The coverage periods were intentionally identical; it was the practice of CU, one that was common in the industry and known to insurance agents, that it would not write umbrella coverage for an insured unless it also wrote the insured's homeowners coverage.[4]

On October 11, 1989, CU, having not then been notified of

---

[3]The CU automobile policy was, thus, still in effect at the time of the accident on December 1, 1989, and it is this policy that paid $455,000 of the Fedeles' liability to Connors.

[4]An exception to this practice might be made if the insured's homeowners policy was to expire in the reasonably near future, and CU was assured of writing the replacement policy.

the Fedeles' change of agents, sent the Fedeles' renewal home-
owners policy to Rogers & Gray, which, in the normal course,
would have sent the new homeowners policy to the Fedeles
just prior to the expiration date of the existing policy. On
October 19, 1989, however, Mahoney & Wright sent a letter
to Rogers & Gray, with a copy to Stephen Fedele, informing
Rogers & Gray that, "[e]ffective 11/30/89 this agency will be
writing the homeowners policy for the Fedeles . . . . Mr. &
Mrs. Fedele wish to thank you for all past courtesies." Rog-
ers & Gray returned the renewal homeowners policy to CU
with instructions to cancel it effective at its inception (i.e.,
midnight November 30). Mahoney & Wright, at some time
during October or November, procured a new homeowners
policy for the Fedeles with Commerce.[5]

The summary judgment record leaves no doubt that Steven
Fedele intended Mahoney & Wright to obtain all new policies
to replace his CU policies and that he was concerned that
there be no lapse. By late November — apparently either
November 28 or 29 — Stephen Fedele telephoned Mahoney
& Wright to make sure that provision had been made for
replacing his umbrella coverage. He was told that the
umbrella coverage was in the process of being applied for and
that it would be effective — if necessary retroactively —
November 30, the expiration of the existing CU policy. On
November 29, Phyllis Jones of Rogers & Gray telephoned
Mahoney & Wright because the Fedeles' umbrella policy was
on an internal checklist of policies not being renewed. The
purpose of the call was to verify that Mahoney & Wright
understood that CU, no longer having the homeowners cover-
age, would not be renewing the umbrella coverage. Phyllis
Jones supplied information to Claire Ball of Mahoney &
Wright necessary for her to apply for the replacement policy.
On November 29, Mahoney & Wright sent the application
for the replacement umbrella policy to Commerce, but the
application had not been acted on at the time of Jason's ac-
cident and was in fact subsequently denied.

---

[5]Phyllis Jones of Rogers & Gray agency correctly interpreted the letter
of October 19 to mean that Mahoney & Wright would be placing the
homeowners coverage with a company other than CU. She explained that if
Mahoney & Wright had intended to keep the Fedeles' homeowners cover-
age with CU, it would have sent instead a "broker of record" letter to
obtain possession of the renewal policy.

The CU umbrella policy contained the following provision applicable to a decision by the company not to renew the umbrella coverage after the stated policy period:

"Section 11. Non-Renewal

> We may elect not to renew this policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice."

Commercial Union takes the position — fundamentally sound, in our view — that the thirty-day notice of a decision not to renew comes into play only where it is CU that decides not to renew and is inapplicable where, as here, it is the insured who decides not to renew. The purpose of the notice clause, in other words, is to alert the insured of an impending termination of coverage so that he or she will have reasonable time to procure a replacement policy. Stephen Fedele was fully aware of the impending expiration of the policy and had instructed Mahoney & Wright to apply for its replacement. In these circumstances, the notice would have served no purpose.

Connors, suing as assignee of the Fedeles, takes the position that a failure by the insurer to send the notice of non-renewal has the effect of leaving the policy coverage in place after the expiration of the policy period. That reading would make the clause the practical equivalent of an automatic extension or renewal clause, whereby a contract period is automatically extended for a further period unless one party or the other gives timely notice of a decision to terminate, as in *Lewenberg* v. *Friedstein,* 259 Mass. 146, 147-148 (1927), and cases cited. The clause does not read like one providing for an automatic renewal or extension. Compare *Willitts* v. *Roman Catholic Archbishop of Boston,* 411 Mass. 202, 206-208 (1991). The terminal date of the policy coverage was stated, without qualification, to be November 30, 1989.

Comparable cases from other jurisdictions suggest that, where, as here, the insured has no intention of continuing coverage beyond the policy term, he is not covered beyond that term even if the insurer, ignorant of the insured's intention not to renew, issues a renewal policy. A policy so issued

is regarded as an offer of a renewal contract, which must be accepted, by payment of the premium or promise to pay, express or implied, before coverage is in effect. See, e.g., *Kudrna* v. *Great N. Ins. Co.*, 175 F. Supp. 783, 786-787 (D. Mont. 1959); *Cook* v. *Michigan Mut. Liab. Co.*, 154 Ind. App. 346, 350-351 (1972); *St. Paul Fire & Marine Ins. Co.* v. *Bierwerth,* 285 Minn. 310, 317-320 (1969); *Hodge* v. *National Fid. Ins. Co.*, 221 S.C. 33, 41-43 (1952). Suppose, for instance, that Jason's accident had not occurred, that Commerce had in due course issued the replacement umbrella policy, and that Stephen Fedele had paid the Commerce premium. No claim could be made by CU that it should be paid a premium, even if it had issued a renewal policy. Of such cases it has been said, "[i]f the insured is not bound to pay the premium, the insurance company is not bound to cover the risk." *Boone* v. *Standard Acc. Ins. Co. of Detroit,* 192 Va. 672, 682 (1951). There was no umbrella insurance policy in effect on December 1.

Another line of reasoning leads to the same conclusion. On the summary judgment record, Mahoney & Wright was acting as agent for Stephen Fedele with respect to obtaining new policies to replace the expiring or terminated CU policies. When it advised Rogers & Gray that it would obtain a replacement homeowners policy for the Fedeles, it knew, or should have known as one familiar with CU's practice not to write an umbrella policy unless it also wrote the homeowners policy to which the umbrella coverage was excess, that CU would not renew the Fedeles' umbrella policy at the end of the coverage period. On the record before us, it is not suggested that Mahoney & Wright was relying on a CU renewal; rather, it simply neglected to apply in timely fashion for the replacement umbrella policy. Under standard agency principles, Mahoney & Wright's knowledge of CU's practice is imputed to Stephen Fedele. See *Suit* v. *Woodhall,* 113 Mass. 391, 395 (1873); *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.*, 285 Mass. 291, 293 (1934); *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983); Restatement (Second) of Agency § 272 (1958).

On this record, Mahoney & Wright in effect informed CU (through Rogers & Gray) of the Fedeles' decision not to renew the two related policies. In these circumstances, a notice by CU that it would not be renewing the policies would have been superfluous.

The judge was correct in concluding that the CU umbrella policy expired on November 30, 1989, and was not in effect at the time of the accident the next day.

*Judgment affirmed.*