LAWRENCE J. KORB *vs.* RAYTHEON CORPORATION.

Middlesex. March 7, 1991. - July 8, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ

*Public Policy. Employment*, Termination. *Constitutional Law*, Freedom of speech and press. *Civil Rights*, Termination of employment.

In a civil action, summary judgment was correctly entered for the defendant, where no public policy was violated by the defendant's discharge of its at-will employee who had rendered himself ineffective as the defendant's spokesperson by publicly expressing views in direct conflict with the economic interest of the defendant [584], nor in that circumstance was there any improper interference with the rights secured to the plaintiff employee by the State Civil Rights Act, G. L. c. 12, § 11I [585].

CIVIL ACTION commenced in the Superior Court Department on December 8, 1987.

The case was heard by *Robert J. Hallisey*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jonathan Shapiro* (*John Reinstein* with him) for the plaintiff.

*Sandra L. Lynch* for the defendant.

*James M. Shannon*, Attorney General, & *Stephen A. Jonas*, Deputy Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

ABRAMS, J. Lawrence J. Korb was dismissed from his position as vice president for Washington operations of Raytheon Corporation because he publicly expressed views in direct conflict with the corporation's economic interest. He appeals from a summary judgment ordered in Raytheon's favor denying his claims for wrongful discharge and for a violation of

the State Civil Rights Act, G. L. c. 12, § 11I (1990 ed.) (SCRA). We affirm.

From 1981 to 1985, Korb served with the United States Department of Defense as assistant secretary of defense for manpower, installations, and logistics. After leaving government service, Korb was hired by Raytheon as vice president in charge of Washington operations. In this position Korb was responsible for congressional relations and acted as a liaison with various government departments, including the Department of Defense. Raytheon's president told Korb that the company wanted him to be a visible public person in Washington.

In December, 1985, with Raytheon's permission, Korb joined the executive board of the Committee for National Security (CNS), a nonprofit organization dedicated to informing the public about issues of national security and the prevention of nuclear war. On February 25, 1986, CNS held a press conference in a Senate office building during Korb's normal lunch hour in connection with the release of its annual alternative defense budget. Korb spoke at the press conference. An article in the Washington Post newspaper the day after the press conference reported on the event. The article described Korb as a former assistant secretary of defense "[n]ow a private citizen working for arms maker Raytheon Co." It stated that at the press conference, Korb was critical of increased defense spending and urged a scaling back of the 600 ship, fifteen carrier group Navy supported by the Secretary of the Navy.

As a result of the article, two Navy officials and a staff member of the Senate Armed Services Committee telephoned Raytheon officials to express their disapproval of Korb's reported remarks. Air Force officials also complained to Raytheon. Korb was immediately summoned to Raytheon's headquarters in Lexington, Massachusetts, and informed that his job was in jeopardy. Korb agreed to write a letter to the editor of the Washington Post clarifying his statements. The Washington Post published the letter on March 4, 1986, under the heading, "We Need More Money for Defense."

Nevertheless, on March 12, 1986, Raytheon officials told Korb that he would be terminated from his position as vice president for Washington operations effective March 31 because of the Navy, Air Force, and Armed Services Committee objections. They informed him that, if he resigned voluntarily he could remain on the payroll as a "special advisor" until August 31, 1986. As a condition of this position, he would be required to obtain approval for all public speeches and would not be permitted to give interviews to the media. Later in March, Raytheon offered, as an alternative to termination, reassignment to a position as a commercial marketing consultant at a Raytheon subsidiary in Philadelphia, Pennsylvania, where he would not be permitted to deal with the Department of Defense. According to Korb, the Philadelphia job was inferior to his Washington position in salary, benefits, tenure, status, and responsibility.[1]

In December, 1987, Korb filed a complaint in the Superior Court alleging wrongful termination in bad faith and for reasons that violated the public policy of the Commonwealth. He also alleged that Raytheon interfered by threats, intimidation, and coercion with rights secured by the Constitution and the laws of the United States and of the Commonwealth of Massachusetts in violation of the SCRA. Raytheon removed the case to Federal District Court pursuant to 28 U.S.C. § 1441 (1988). Korb then amended his complaint, deleting any references to the Constitution or laws of the United States. On February 15, 1989, the Federal District Court remanded the case to the Superior Court on the ground that it did not raise a Federal question. In December, 1989, a judge of the Superior Court, treating Raytheon's motion to dismiss as a motion for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), see Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), entered judgment for

---

[1]Raytheon disputes Korb's assertion that he was fired, contending instead that he voluntarily resigned. Because we uphold summary judgment in Raytheon's favor, even accepting Korb's assertion that he was fired, this disputed factual issue is not material. Furthermore, Raytheon does not contest Korb's claim that Raytheon's actions were taken in response to his statements at the press conference.

Raytheon on both counts. Korb appealed and we transferred the case from the Appeals Court on our own motion.

1. *Wrongful discharge.* Korb alleges that he was wrongfully terminated in bad faith and in violation of the public policy of the Commonwealth as set forth in art. 16 of the Massachusetts Declaration of Rights.[2] In *DeRose* v. *Putnam Management Co.*, 398 Mass. 205 (1986), we held that employees at will may recover from employers when they are terminated for reasons that violate public policy. Korb contends that art. 16 embodies a strong public policy supporting freedom of speech, and that Raytheon's actions interfered with both his right to express himself and the public's right to hear what he had to say.

Korb characterizes the public policy at issue too broadly. His situation is not that of an employee who is fired for speaking out on issues in which his employer has no interest, financial or otherwise. To the contrary, Korb was hired to be the corporation's spokesperson, and he spoke against the interests of the corporation. The topic was one of acute concern to Raytheon. Regardless of whether Korb believed himself to be acting privately rather than as a Raytheon employee, and regardless of what Korb actually said, the public perception after the press conference was that a Raytheon lobbyist advocated a reduction in defense spending. Raytheon had a financial stake in not advocating that position. Therefore, it determined that Korb had lost his effectiveness as its spokesperson. There is no public policy prohibiting an employer from discharging an ineffective at-will employee. The fact that Korb's job duties included public speaking does not alter this rule.[3]

---

[2]Article 16 states in pertinent part: "The right of free speech shall not be abridged."

[3]We emphasize that Korb's situation does not fall within any public policy that may protect the speech of a whistleblower who speaks against his or her employer's interest. See *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 560 n.6 (1988). Raytheon is not attempting to suppress Korb's speech in order to cover up its own wrongdoing. Nor is there any allegation that Raytheon is discharging Korb in an attempt to deprive him of a contractual benefit to which he is otherwise entitled. See *Gram* v. *Liberty Mut.*

2. *State Civil Rights Act.* Korb also asserts a claim under the State Civil Rights Act, G. L. c. 12, § 11I (1990 ed.) (SCRA). The SCRA provides a remedy when "any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth." G. L. c. 12, § 11H (1990 ed.) (incorporated into G. L. c. 12, § 11I). Korb's SCRA claim cannot stand for the same reason his wrongful discharge claim cannot stand: there is no improper interference with secured rights when an employer fires an at-will employee who has become ineffective. Although Korb has a secured right to speak out on matters of public concern, and he has a right to express views with which Raytheon disagrees, he has no right to do so at Raytheon's expense. Korb was hired to be an advocate for Raytheon. After he spoke, he lost his utility as Raytheon's advocate. Raytheon therefore determined that, in such circumstances, it would no longer pay him to be its advocate. That business decision was not an interference with any secured rights. Korb is free to express whatever opinions he wishes. Raytheon need not pay him to do so.

*Judgment affirmed.*

*Ins. Co.,* 384 Mass. 659 (1981); *Fortune* v. *National Cash Register Co.,* 373 Mass. 96 (1977).