John B. PETROVSKI, Plaintiff,

v.

FEDERAL EXPRESS CORPORATION, et al., Defendants.

No. 3:02CV7099.

United States District Court, N.D. Ohio, Western Division.

May 24, 2002.

Kathryn T. Joseph, Aggers & Joseph, Vincent L. Cheverine, Aggers & Joseph, Pepper Pike, OH, for Plaintiffs.

Michele L. Fowler, FedEx Express, Memphis, TN, Sue Marie Douglas, Millisor & Nobil, Cleveland, OH, Linda Carr, Church & Dwight Co., Inc., Mark Bilawsky, Church & Dwight Co., Inc., Princeton, NJ, Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

In this case, Plaintiff John Petrovski asserts claims of wrongful discharge in violation of public policy against Federal Express Corporation ("Fed Ex"), and intentional interference with a business relationship against Church & Dwight Company. This case was removed to this court on the basis of diversity jurisdiction. Pending is Fed Ex's motion to dismiss. For the following reasons, Fed Ex's motion shall be granted.

## BACKGROUND

Plaintiff began working for Fed Ex as a courier in July, 1989. On September 15, 2000, Fed Ex terminated plaintiff's employment. During the five years preceding his termination, plaintiff made deliveries on a nearly daily basis to Church & Dwight. During that time, plaintiff became acquainted with several Church & Dwight employees, and would often engage these employees in "non-business" conversation.

With two Church & Dwight employees in particular, plaintiff would often discuss his personal interest in firearms, including his attendance at gun shows and his shooting on weekends. In one instance, plaintiff told a Church & Dwight employee that he was transporting a hazardous package that may explode.

These conversations became the basis for a complaint by Church & Dwight to Fed Ex. As a result of this complaint, Fed Ex terminated plaintiff's employment. Plaintiff alleges that prior to his discharge, Fed Ex provided no warnings regarding the quality or any other aspect of his work.

Plaintiff asserts that his discharge was in violation of the public policies favoring freedom of speech embodied in the First Amendment to the United States Constitution and § 11, Article I of the Ohio Constitution, and endorsing a right to bear arms, as embodied in the Second Amendment to the United States Constitution and § 4, Article I of the Ohio Constitution. Fed Ex has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) or, alternatively, 12(b)(6). For the following reasons, I shall grant Fed Ex's motion pursuant to 12(b)(6).[1]

## DISCUSSION

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant

---

1. Fed Ex asserts that this court lacks subject matter jurisdiction and, therefore, should dismiss this case pursuant to Rule 12(b)(1). It is somewhat unusual that Fed Ex, the removal party, now asserts lack of jurisdiction. Such finding would require this court to remand the case, not dismiss, and might result in liability for the costs and expenses incurred by the removal. *See* 28 U.S.C. § 1447(c). Nonetheless, I find that this court has diversity jurisdiction over this matter for the reasons stated in Fed Ex's notice of removal.

to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

■ Traditionally, Ohio has adhered to the employment-at-will doctrine, which permits an employer to terminate an employment relationship "at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of an employee's rights." *Painter v. Graley*, 70 Ohio St.3d 377, 382, 639 N.E.2d 51 (1994). In *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court carved out an exception to the employment-at-will doctrine for situations where the employee's discharge contravenes public policy. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997). In such a situation, the employee is entitled to bring an action in tort.

■ To maintain a *Greeley* claim, plaintiff must establish: 1) a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); 2) that dismissals under circumstances similar to plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); 3) the plaintiff's dis-

missal was motivated by conduct related to the public policy (the "causation element"); 4) the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"). *Kulch*, 78 Ohio St.3d at 151, 677 N.E.2d 308.

In this case, plaintiff argues that his discharge contravened the clear public policy expressed in the First and Second Amendments to the United States Constitution and §§ 4 and 11, Article I of the Ohio Constitution. Defendant contends that without state action, which plaintiff has failed to allege, a *Greeley* claim based on the public policies embodied in these provisions fails. Plaintiff responds that state action is not required for a *Greeley* claim based on a public policy expressed in the state or federal constitution.

■ It is well-established that the public policy necessary to establish a *Greeley* claim may manifest itself in the state or federal constitutions. *See Painter*, 70 Ohio St.3d at 383, 639 N.E.2d 51 ("Provisions found in the Ohio Constitution are necessarily statements of Ohio public policy, if not the most definitive statements of Ohio public policy."). In addition, the Ohio Supreme Court has based, at least in part, a *Greeley* claim against a private employer on a policy embodied in the Ohio Constitution. *Kulch*, 78 Ohio St.3d at 152, 677 N.E.2d 308 (finding, in a suit against a private employer, the public policy promoting workplace safety in a "host of statutes" and §§ 34 and 35, Article II of the Ohio Constitution). The Ohio Supreme Court, however, has never addressed the issue present in this case, namely, whether the rights to free speech and bear arms, established in the state and federal Constitutions, embodies public policies sufficient to support a wrongful discharge action against a private employer.

Because this is a diversity case, this court must apply state law "in accordance with the then controlling decision of the highest state court." *Grantham & Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 608 (6th Cir.1987). Because the Ohio Supreme Court has not addressed the issue present in this case, I must "ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." *Id.*[2]

I find initial guidance in an Ohio appeals court case, *Stephenson v. Yellow Freight*

---

**2.** In view of the near unanimity of opinion on the issue, and the persuasiveness of such opinion, I decline to certify any questions of law to the Ohio Supreme Court under that Court's Rule of Practice XVIII.

**3.** Plaintiff asserts that any reliance on *Stephenson* is misplaced. Plaintiff argues that the court in *Stephenson,* applying the holding of *Haynes v. Zoological Soc. of Cincinnati,* 73 Ohio St.3d 254, 652 N.E.2d 948 (1995), held that a *Greeley* cause of action is only available to employees-at-will, which the appellant was not because of a collective bargaining agreement. Thus, according to plaintiff, the passage in *Stephenson* cited by this court is mere dicta and, additionally, the statement contradicts other Ohio Supreme Court decisions.

Plaintiff's reading of *Stephenson* is, however, incomplete. While the court stated that the appellant was not an employee-at-will under *Hayes,* the court refused to address the merits of the appellant's claim that federal law preempted the holding in *Hayes.* The court chose not to reach the merits of this argument because it determined that the appellant would not have had a *Greeley* claim even if he had been an at-will employee. In reaching this conclusion, the court determined that the appellant could not base a *Greeley* claim against a private employer on the public policy embodied in § 11, Article I of the Ohio Constitution. This determination was, therefore, material to the court's decision, and not mere dicta. *See State, ex rel. Gordon v. Barthalow,* 150 Ohio St. 499, 505–6, 83 N.E.2d 393 (defining obiter dictum as

*Sys., Inc.,* No. 99AP–77, 1999 WL 969817 (Ohio App. Oct. 26, 1999). In *Stephenson,* the appellant, a private employee, sought review of the lower court's dismissal of his *Greeley* claim. In affirming the dismissal, the court stated: "[A]ppellant's contention that his wrongful discharge claim is also based upon the public policy embodied in Section 11, Article I of the Ohio Constitution (freedom of speech) is without merit as the prohibitions contained therein apply only to state action, not the actions of a private citizen or employer." *Id.* at *19. (citing *Eastwood Mall, Inc. v. Slanco,* 68 Ohio St.3d 221, 223, 626 N.E.2d 59, (1994)).[3]

---

"an incidental and collateral opinion uttered by a judge, and therefore (as not material to his decision or judgment) not binding").

I also disagree with plaintiff that other authorities contradict *Stephenson.* None of the cases that plaintiff cites addressed the issue of whether a *Greeley* claim, based on the public policy embodied in § 11, Article I of the Ohio Constitution, exists against a private employer. *See Kulch,* 78 Ohio St.3d at 152, 677 N.E.2d 308 (finding public policy expressed in §§ 34 and 35, Article II of the Ohio Constitution as a basis for a *Greeley* claim against a private employer); *Painter,* 70 Ohio St.3d at 384 n. 9, 639 N.E.2d 51 (refusing to address the issue, "We express no opinion as to whether public policy would prohibit a private employer from discharging an employee based on that employee's becoming a candidate for public office."); *Chapman v. Adia Services, Inc.,* 116 Ohio App.3d 534, 542, 688 N.E.2d 604 (1997) (finding public policy expressed in § 16, Article I of the Ohio Constitution); *Jenkins v. Parkview Counseling Ctr., Inc.,* 2001 WL 15938 *7 (Jan. 3, 2001) (same); *Wilmot v. Forest City Auto Parts,* Cuyahoga App., 2000 WL 804616 *10–11 (June 22, 2000) (citing *Chapman* and finding a clear public policy that requires a witness to testify truthfully); *Halk v. Cedarville Coll.,* 1998 WL 425597 *2–3 (June 26, 1998) (finding public policy expressed in the Fifth and Fourteenth Amendments to the United States Constitution and § 16, Article I of the Ohio Constitution).

■ While a decision by a lower state court is not controlling where the highest state court has not spoken, the decision of "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*" *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (citations omitted); *Grantham & Mann,* 831 F.2d at 608–09.

Here, I find no other persuasive data that would lead me to disregard the court's statements in *Stephenson.* Rather, the "prevailing view among the majority of courts addressing the issue is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims." *Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 506 S.E.2d 578, 589 (1998) (citing cases). *Accord, Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354, 1357 (1985); *Korb v. Raytheon Corp.,* 410 Mass. 581, 584, 574 N.E.2d 370 (1991); *Prysak v. R.L. Polk Co.,* 193 Mich.App. 1, 483 N.W.2d 629, 634 (1992); *Johnson v. Mayo Yarns, Inc.,* 126 N.C.App. 292, 484 S.E.2d 840, 843 (1997); *Drake v. Cheyenne Newspapers, Inc.,* 891 P.2d 80, 82 (Wyo.1995); *see also* David C. Yamada, *Voices From the Cubicle; Protecting and Encouraging Private Employee Speech in the Post–In-dustrial Workplace,* 19 Berkeley J. Emp. & Lab. L. 1, 22 (1998) ("In arguing for protection of private employee speech under the public policy exception, advocates and commentators have turned to the First Amendment and its state counterparts as the requisite sources of public policy. This argument, however, has had little success in the courts."); Lisa B. Bingham, *Employee Free Speech in the Workplace: Using the First Amendment as Public Policy for Wrongful Discharge Actions,* 55 Ohio St. L.J. 341, 391 (1994) ("The prevailing view is that the First Amendment cannot be the basis of a public policy exception in wrongful discharge claims in the absence of state action.").[4]

In light of *Stephenson* and other persuasive authority, I hold that, absent state action, plaintiff's *Greeley* claim based on the public policy embodied in the First Amendment and § 11, Article I fails.

This leaves plaintiff's claim based on the public policy embodied in the Second Amendment and § 4, Article I—the right to bear arms. Both the plaintiff and this court have failed to uncover any authority addressing this issue. Despite this failure, plaintiff's claim should be dismissed.

■ Here, plaintiff has failed to allege any facts that would implicate the Second Amendment or § 4, Article I. Plaintiff alleges that he engaged in conversations regarding his personal interest in firearms,

---

**4.** This court found only one case holding that the First Amendment and its state counterpart embody public policy sufficient to support a wrongful discharge action against a private employer. *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894 (3d Cir.1983). In *Novosel,* the court stated that "an important public policy is in fact implicated wherever the power to hire and fire is utilized to dictate the terms of employee political activities," and that the "protection of important political freedoms ... goes well beyond the question whether the threat comes from state or private bod-ies." *Id.* at 900. In a subsequent case, however, the Pennsylvania Supreme Court refused to adopt the broad holding in *Novosel. See Paul v. Lankenau Hosp.,* 524 Pa. 90, 569 A.2d 346, 348 (1990); *see also* Bingham, *supra,* at 350 n. 39 ("*Novosel* has been described as the most far-reaching extension of the public policy doctrine and as a dramatic break with precedent because prior cases had unanimously required that government action be present in order for a constitutional violation to exist.").

including his visits to gun shows and participation in shooting on weekends. Plaintiff alleges that his conversations concerning firearms led, in part, to his discharge. Thus, plaintiff's conversations about, not his possession of firearms led to his discharge.

■ Nonetheless, even if his possession of a firearm had led to his discharge, plaintiff's claim would fail for the same reason his free speech claim failed: lack of state action. The policies embodied in the Second Amendment and § 4, Article I are limited to government action, and there is nothing to indicate .that these provisions concern the relationships between private individuals.[5]

### CONCLUSION

It is, therefore,

### ORDERED THAT

1. Fed Ex's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) be, and hereby is, granted; and

2. A pretrial conference between the Plaintiff and the remaining defendant, Church & Dwight Company is scheduled for June 11, 2002 at 10:00 a.m.

**So ordered.**

---

**5.** Even the rights under these provisions, in relation to the government, are limited. The Second Amendment right "to keep and bear Arms" applies only to the right of the State to maintain a militia, and, therefore, the Amendment only guarantees a "collective" right rather than an "individual" right. *United States v. Napier*, 233 F.3d 394, 402 (6th Cir. 2000). Section 4, Article I secures an individual right to bear arms for defense and security, but this right is not absolute. *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 46, 616 N.E.2d 163 (1993) (upholding city's ban on the sale and possession of assault weapons).