SELYA, Circuit Judge
(concurring in the judgment).
I agree with my brethren that the entry of summary judgment in this case should be affirmed. I write separately, however, because the majority’s analytical approach is out of step with the logical sequence prescribed by the Massachusetts Supreme Judicial Court (SJC), unnecessarily reaches an issue that was neither addressed by the district court nor substantively briefed by the appellees, and adds elements of confusion to what I view as a straightforward case.
As the SJC has repeatedly stated, a plaintiff who sues under the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H, 111, must show: (I) that he was exercising a protected right; (ii) that the defendant interfered (or attempted to interfere) with that right; and (iii) that the interference was accomplished (or meant to be accomplished) by threats, intimidation, or coercion. Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 646 N.E.2d 139, 148-49 (1995); Bally v. Ne. Univ., 403 Mass. 713, 532 N.E.2d 49, 51-52 (1989).[8] In this practical progression, the question of whether the case involves interference is antecedent to the question of how any interference may have been accomplished. See, e.g., Korb v. Raytheon Corp., 410 Mass. 581, 574 N.E.2d 370, 372-73 (1991); cf. Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 668 N.E.2d 333, 337-38 (1996) (recognizing need at least to assume interference before reaching question of coercion).
The majority inexplicably abandons this measured framework and jumps to the coercion question. It does so despite the lack of any treatment of that issue by the district court and only a passing reference to it by the prevailing parties, who correctly state that it is unnecessary to deal with the issue. Ultimately, what emerges is a confused and confusing analysis regarding the nature of coercion, in which the majority acknowledges that the SJC’s application of that term is unclear, yet proceeds to rely on a patchwork of marginally relevant state and federal cases to reach a conclusion that adds little clarity to the issue. I would take a more direct approach — one that fits comfortably with the sequence established by Massachusetts precedent — ■ and dispose of the plaintiffs claim at the interference step.
The plaintiff, in denouncing O’Reilly’s nomination, was plainly exercising constitutionally guaranteed rights.[9] The logical *81 question then is whether the defendants can be said to have interfered with the plaintiffs exercise of those rights.
Of course, an adverse employment action may, in certain circumstances, constitute interference with the exercise of constitutional rights. See, e.g., Foote v. Town of Bedford, 642 F.3d 80, 83 (1st Cir.2011); Barton v. Clancy, 632 F.3d 9, 29 (1st Cir.2011); see also Poh v. Mass. Corr. Officers Federated Union, No. 03-11987, 2006 WL 1877089, at *6 (D.Mass. July 7, 2006) (making this observation under MCRA). In an effort to bring his case within this sphere, the plaintiff tries to draw a line in the sand between at-will employees and persons employed under contracts. His thesis is that termination of a person within the former group cannot amount to interference while termination of a person within the latter group categorically amounts to interference. That thesis is incorrect.
It is true that an at-will employee normally will be unable to demonstrate the type of entitlement to continued employment sufficient to support an MCRA claim. See, e.g., Webster v. Motorola, Inc., 418 Mass. 425, 637 N.E.2d 203, 206 (1994); Korb, 574 N.E.2d at 372. It does not follow, however, that the mere existence of an employment contract establishes that the firing of the contract-holder amounts to interference. The interference inquiry is functional, not formalistic. Termination of employment can only interfere with the exercise of protected rights to the extent that the plaintiff has an entitlement to ongoing employment. See Buster v. George W. Moore, Inc., 438 Mass. 635, 783 N.E.2d 399, 410 (2003); Korb, 574 N.E.2d at 372 n. 3; see also Poh, 2006 WL 1877089, at :;:6.
Different contracts have different permutations, and an individual who is employed under a particular contract may be unable to show interference if, say, the terms of the contract afford the employer a valid reason for terminating the contract. See Willitts v. Roman Cat. Archbishop of Bos., 411 Mass. 202, 581 N.E.2d 475, 480 (1991) (finding “no improper interference” where employer “exercised its discretion” in deciding not to renew an expiring employment contract). In other words, the exercise of a legitimate cause for termination under the terms of an employment contract eliminates any right to continued employment and, thus, eliminates any possibility of the sort of interference with that right required by the MCRA. It is hard to imagine a better illustration of this precept than a situation in which the contract confers upon the employer the sole discretion to terminate.[10]
The rest is child’s play. Under Massachusetts law, courts are charged to interpret a contract “according to its plain meaning.” S. Union Co. v. Dep’t of Pub. Utils., 458 Mass. 812, 941 N.E.2d 633, 640 (2011). The interpretation of an unambiguous contract is a matter of law for the court. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 761 N.E.2d 946, 951 (2002). So, too, is the determination as to whether a contract contains an ambiguity. Bank v. Thermo Elemental Inc., 451 Mass. 638, 888 N.E.2d 897, 907 (2008).
Gauging the existence of an ambiguity requires an objective reading of the text of *82 the contract; “an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other.” Lumbermens Mut. Cas. Co. v. Offices Unltd., Inc., 419 Mass. 462, 645 N.E.2d 1165, 1168 (1995). To be ambiguous, the language, fairly read, must be “susceptible of more than one meaning.” Id.
The key provision of the Agreement is paragraph 6(b)(v). With respect to that paragraph, the plaintiff asserts that there remain “genuine issues of material fact as to whether [he] was insubordinate, whether he breached his employment agreement, and whether he publicly acted contrary to Comcast’s business interests.” Appellant’s Br. at 18. This assertion fails because the factual disputes that the plaintiff identifies are not material. The plain language of paragraph 6(b)(v) designates Comcast as the sole arbiter of whether the plaintiffs actions reflected unfavorably on Comcast’s interests or reputation (and, thus, warranted termination). The paragraph twice notes that Comcast’s “sole and absolute judgment” controls decisions of this type. In light of that language, it is beyond peradventure that Comcast validly invoked its authority under paragraph 6(b)(v) when it cashiered the plaintiff.
For present purposes, the only relevant question is whether Comcast determined that the plaintiffs conduct violated paragraph 6(b)(v). There is no room to doubt either that Comcast made such a determination or that it timely communicated this determination to the plaintiff. Once Com-cast ended the plaintiffs employment in conformity with this contractual provision, his right to continued employment was extinguished.
That effectively ends the matter. The warrantable loss of the right to continued employment under the Agreement destroyed the necessary predicate for maintaining an action under the MCRA. Simply put, there was no interference with any protected right.
There is nothing fundamentally unfair about this outcome. The plaintiff, a highly compensated individual in a highly visible position, bargained for and accepted an arrangement that gave his employer unfettered discretion in such matters. He knew from the start that Comcast’s “sole and absolute judgment” would determine when and whether paragraph 6(b)(v) would apply-
The upshot is that, under the Agreement, Comcast was free to discharge the plaintiff if, in its sole judgment, his conduct impaired the company’s interests. Its exercise of that prerogative did not interfere with any right protected by the MCRA, and I would affirm the entry of summary judgment on this ground.

. The cases cited by the majority, see supra note 1, do not support a contention that Massachusetts has departed willy-nilly from this sequence.

. In Redgrave v. Boston Symphony Orchestra, Inc., 855 F.2d 888 (1st Cir.1988) (en banc), we noted that there is a certain awkwardness in applying the MCRA where free speech rights are involved. Id. at 904. My view of the interference prong in this case makes it unnecessary to probe the implications of this uneasy fit.

. The majority is concerned that the approach I take ''mak[es] judgments about contracts that offer more protection to their employees than the one at issue here” and “disregards our obligation in diversity cases to resolve state law questions narrowly.” Supra, p. 79. To the contrary, my approach is appropriate here precisely because the contract in this case uniquely functions like an at-will contract, making the application of Massachusetts precedent in that area compelling. Because this approach applies state law by direct analogy, it is necessarily narrow — much more so than the majority's speculative attempt to unravel the meaning of coercion.