[Cite as *Hall v. Kosei St. Marys Corp.*, 2023-Ohio-2021.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

RITA M. HALL,

    PLAINTIFF-APPELLANT,

    v.

KOSEI ST. MARYS CORPORATION,

    DEFENDANT-APPELLEE.

CASE NO. 2-22-26

O P I N I O N

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2022-CV-47

Judgment Affirmed

Date of Decision:  June 20, 2023

APPEARANCES:

    *Royce A. Link* for Appellant

    *Jeffrey P. Squire* and *Zach G. Ferrall* for Appellee

Case No. 2-22-26

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Rita M. Hall ("Hall") appeals the judgment of the Auglaize County Court of Common Pleas, alleging that the trial court erred by granting summary judgment in favor of Defendant-Appellee Kosei St. Marys Corporation ("KSM"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Hall was an at-will employee at KSM for six years and worked as a line supervisor. In June of 2020, she publicly shared an image on Facebook that consisted of two juxtaposed pictures. In the top picture, a number of monkeys are located on and around a car. In the bottom picture, a number of African Americans are located on and around a car.[1] At least three of Hall's subordinates or coworkers raised complaints about this post with the associate relations department at KSM. Hall was subsequently terminated on June 24, 2020. On March 21, 2022, Hall filed a complaint with the trial court, raising claims of wrongful termination in violation of public policy and retaliation. On September 22, 2022, KSM filed a motion for summary judgment. On November 3, 2022, the trial court granted summary judgment in favor of KSM.

---

[1] The record includes what appears to be a black and white copy of a printout of this meme. While this is a low-resolution image, Hall was asked, during her deposition, whether she "den[ied] that if you look at that photo you can tell they're all African American?" (Hall Depo. Tr. 24). She replied, "In the picture that I had on my Facebook was half this size, you could not tell. They were all dressed in black. You could not tell if they were black, white, Hispanic, whatever." (*Id.*). She later indicated that, when she shared this meme, she "didn't know they were all African American." (*Id.* at 26).

{¶3} Hall filed her notice of appeal on December 5, 2022. On appeal, she raises the following four assignments of error:

**First Assignment of Error**

**The trial court erred by granting summary judgment to Kosei St. Marys Corporation on Rita Hall's claim for retaliation for engaging in protected conduct.**

**Second Assignment of Error**

**The trial court erred in finding that Rita Hall has not set forth any evidence to show any causal connections between her reporting harassment of herself or others by 'JJ' and her termination, and that her termination was based upon her racist Facebook post.**

**Third Assignment of Error**

**The trial court erred by granting summary judgment to Kosei St. Marys Corporation on Rita Hall's claim for wrongful termination in violation of public policy.**

**Fourth Assignment of Error**

**The trial court erred by finding that it is undisputed that Rita Hall posted a racially inflammatory meme comparing black lives matter protestors, primarily African American, to monkeys, and that Kosei St. Marys Corporation had an overriding legitimate business justification for the dismissal.**

After setting forth the general legal standard governing motions for summary judgment, we will consider the first and second assignments of error together in one analysis before proceeding to the third and fourth assignments of error.

*Legal Standard for Summary Judgment*

**{¶4}** "Appellate courts consider a summary judgment order under a de novo standard of review." *Schmidt Machine Company v. Swetland*, 3d Dist. Wyandot No. 16-20-07, 2021-Ohio-1236, ¶ 23. Under Civ.R. 56,

> [s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law * * *. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C). Accordingly, summary judgment is to be granted

> only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.'

*Beair v. Management & Training Corp.*, 3d Dist. Marion No. 9-21-07, 2021-Ohio-4110, ¶ 15, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).

**{¶5}** "Initially, '[t]he party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.'" *Washburn v. OhioHealth Corporation*, 2022-Ohio-

4453, 204 N.E.3d 45, ¶ 13 (3d Dist.), quoting *Zivich v. Mentor Soccer Club, Inc*., 82 Ohio St.3d 367, 370, 1998-Ohio-389, 696 N.E.2d 201, 204 (1998). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Neal v. Treglia*, 2019-Ohio-3609, 144 N.E.3d 1045, ¶ 12 (3d Dist.), quoting *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13.

{¶6} If the moving party carries this initial burden, "[t]he burden then shifts to the party opposing the summary judgment." *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5056, 126 N.E.3d 341, ¶ 11 (3d Dist.), quoting *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

{¶7} "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc*., 2017-Ohio-4217, 92 N.E.3d 256, ¶ 6 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

*First and Second Assignments of Error*

**{¶8}** Hall argues that the trial court erred in concluding that she failed to set forth a prima facie case for her retaliation claim.

Legal Standard

**{¶9}** R.C. 4112.02(I) states that it is "an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." R.C. 4112.02(I).

> To establish a prima facie case of retaliation, a claimant must prove that '(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.'

*Hall v. Crawford County Job and Family Services*, 2022-Ohio-1358, 188 N.E.3d 1138, ¶ 30 (3d Dist.), quoting *Stachura v. Toledo*, 6th Dist. Lucas No. L-19-1269, 2022-Ohio-345, ¶ 84, quoting *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13.

**{¶10}** "Due to the similarities in Title VII and R.C. Chapter 4112, Ohio courts look to federal case law addressing Title VII for assistance in interpreting R.C. Chapter 4112." *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No.

13AP-591, 2014-Ohio-1600, ¶ 45, quoting *Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210, ¶ 60. "[T]o prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor—not just a motivating factor—in the employer's decision to take adverse employment action." *Diller v. Miami Valley Hospital*, 2017-Ohio-9051, 102 N.E.3d 520, ¶ 46 (2d Dist.), quoting *Nebozuk* at ¶ 45.

{¶11} "To demonstrate a causal connection between a materially adverse action, such as suspension or termination, and the exercise of protected rights, 'a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" *Putney v. Contract Bldg. Components*, 3d Dist. Union No. 14-09-21, 2009-Ohio-6718, ¶ 51, quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). "In other words, 'a plaintiff must produce evidence which permits the inference that apart from the protected activity, the adverse action would not have been taken.'" *Putney* at ¶ 51, quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563(6th Cir. 2000).

> This determination is made with reference to the surrounding circumstances, including 'evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights[.]' *Id.* * * *.

(Citations omitted.) *Putney* at ¶ 51. "[I]n a small subset of cases, temporal proximity alone may be sufficient to establish causality * * *[.]" *Id.* at ¶ 52. "Generally, mere temporal proximity between a protected activity and a materially

adverse action without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of a retaliation claim." *Id.*

Legal Analysis

**{¶12}** In response to KSM's motion for summary judgment, Hall submitted copies of email exchanges that occurred in January of 2020 and March of 2020. On January 4, 2020, Hall emailed her supervisor, Justin Budde ("Budde"), to report that one of her subordinates was involved in a verbal altercation with another KSM employee, Kelsey Swan ("Swan"). In response, Budde stated that he took witness statements and was going to speak with the subordinate identified by Hall. Swan indicated in her witness statement that Hall's subordinate had directed a number of racially charged remarks towards her (Swan).[2] Hall then emailed Daniel Hosek ("Hosek"), who was the senior manager of the associate relations department at KSM. Hosek replied, indicating that Budde had addressed this subordinate and stating that Hall could come to the associate relations department for further discussions about this issue.

**{¶13}** On March 20, 2020, another supervisor at KSM, Keary Siegrist ("Siegrist"), sent an email to Hall; Budde; and one other KSM employee, Robert Dugger ("Dugger"). Siegrist reported that the same subordinate that Hall discussed in the January 2020 email exchange was refusing to work in another department.

---

[2] In her January 2020 email, Hall did not mention that her subordinate had made racially charged remarks. She only mentioned that an incident had occurred. Swan then reported that the racially charged comments in the subsequent inquiry that management made into this incident.

Siegrist wrote that this subordinate maintained that Hall "always sends the black people to go to the other department." (Ex. 1).[3] Hall replied to this email, indicating that this subordinate had stated that she (Hall) is like a "slave owner," that KSM is "raciest" [sic], and that KSM is "like a plantation." (Ex. 1). Dugger then responded to this thread, confirming that this subordinate had made several of these remarks. However, he also indicated that he was able to resolve the issue with the subordinate that night.

**{¶14}** Hall asserts that these emails demonstrate that she engaged in a protected activity by reporting incidents in which one of her subordinates had made racially charged comments in the January 2020 and March 2020 email exchanges. She then points to the fact that this subordinate later complained to the associate relations department about the Facebook post that had led to her (Hall's) termination. Hall argues that, in so complaining, this subordinate used the associate relations department to retaliate against her (Hall) for previously reporting the racially charged comments. However, even if Hall engaged in a protected activity as alleged and even if Hall has alleged a possible method of retaliation,[4] Hall still has not established the causation element of her retaliation claim.

---

[3] Later in this same email, Siegrist indicated that Hall had regularly sent at least one employee who was not black to work shifts in another department. In his deposition, Dugger also denied that Hall only sent black people to the other departments.

[4] Hall appears to be arguing under a "cat's paw" theory of liability for her retaliation claim. *Collins v. City of Mason*, 2020-Ohio-1186, 153 N.E.3d 484, ¶ 50 (12th Dist.). The United States Supreme Court has explained this theory as follows: "[a] plaintiff alleging liability under the cat's paw theory seeks 'to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" *Staub v. Proctor Hosp.*, 562 U.S. 411, 415, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011). In *Staub*,

{¶15} In this case, only one of Hall's subordinates was identified as making racially charged comments in the incidents discussed in the January 2020 and March 2020 email exchanges, but the documents that Hall filed with her motion in opposition to summary judgment indicate that at least three of her subordinates or coworkers complained to associate relations about her Facebook post. In his deposition, Hosek confirmed that "at least three" employees raised complaints and stated that "[t]hey referenced others" who were apparently upset. (Hosek Depo. Tr. 23). The record indicates that associate relations documented meetings with Swan and another employee who had concerns about Hall's post.

{¶16} Further, the documents filed by Hall indicate that, in the verbal altercation that she reported in January of 2020, the racially charged comments of Hall's subordinate were directed at Swan. The documents filed by Hall also indicate that Swan was one of the subordinates that complained about the Facebook post in June of 2020. In a meeting with associate relations, Swan reported to Hosek that

the Supreme Court described a situation in which a biased supervisor, who did not have the authority to take the challenged adverse employment action, used his influence to cause an unbiased decision maker in human resources to take the adverse employment action desired by the biased supervisor. *Id*. at 414-416. In the case presently before us, Hall argues that one of her subordinates—not one of her supervisors—complained to the ultimate decision maker who then took the adverse employment action that is herein challenged. Whether and how a cat's paw theory could be established under the circumstances presented in this case are factually complicated questions. *See Tuttle v. Baptist Health Medical Group, Inc*., 379 F.Supp.3d 622, 633 (E.D. Ky. 2019); *Omanovic v. Tyson Foods, Inc.*, W.D. N.C. No. 5:13-CV-00100-DSC, 2014 WL 3109241, *5 (July 8, 2014). *But see Nichols v. Michigan City Plant Planning Dept*., 755 F.3d 594, 600 (7th Cir. 2014). *See also Sanford v. Walgreen Co*., N.D. Ill. No. 08 C 6325, 2010 WL 380907, *5 (Jan. 27, 2010). However, as our analysis will show, Hall cannot establish that a biased subordinate was a determinative factor in the adverse employment action taken by KSM. Since she cannot establish the causation element of her retaliation claim, we need not address these aforementioned questions and do not make any determination as to these issues in this opinion.

"she had looked up to Rita [Hall] and that this incident hurt her ([Swan]) personally." (Ex. 9). She then stated that "she felt that she could no longer work for Rita." (Ex. 9).

{¶17} Broadening the scope of our analysis, we note that the emails submitted by Hall also indicate that others reported the same comments that she had identified in the March 2020 email exchange. This email thread was initiated by another supervisor, Siegrist. Dugger confirmed the comments mentioned by Hall. Further, Budde conducted the investigation into the January 2020 incident. The record does not contain any evidence that any complaints or adverse employment actions were taken against these individuals that could potentially corroborate Hall's allegations of retaliation.

{¶18} On appeal, Hall argues that the "temporal proximity" between the email exchange on March 20, 2020 and her termination on June 24, 2020 "alone may satisfy the causal element." Appellant's Brief, 14. However, it is not clear from the record that the subordinate who was mentioned in the March 2020 email exchange was ever made aware of Hall's comments in the March 2020 email exchange. Further, the record contains no indication that the subordinate mentioned in the March 2020 email was ever disciplined or reprimanded for what Hall had reported. The emails in the March 2020 exchange were sent to the associate relations department, but Budde and Hosek did not respond. In his deposition, Hosek affirmed that he "didn't personally do anything in response to those emails *

* *" other than reply to the January 2020 email, telling Hall she could come to his office for a further discussion. (Hosek Depo. Tr. 60).

{¶19} This subordinate may have been aware of Hall's report in the January 2020 email exchange because the associate relations department conducted an inquiry into the reported verbal altercation. But by the time Hall was terminated, over twenty-five weeks had passed since the January 2020 email exchange. Given how much time had elapsed, temporal proximity alone cannot establish causation. *Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986); *Reeves v. Digital Equipment Corp.*, 710 F.Supp. 675, 677 (N.D. Ohio 1989); *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 41 (8th Dist.); *Boggs v. The Scotts Company*, 10th Dist. Franklin No. 04AP-425, 2005-Ohio-1264, ¶ 26 (interpreting case law to hold that "an interval of two months between complaint and adverse action so diluted an inference of causation that, without more, a retaliation claim could not stand").

{¶20} In fact, even if the record clearly established that this subordinate had been aware of Hall's report in the March 2020 email exchange, temporal proximity alone still would not, given the other deficiencies already noted in this analysis, have been sufficient to establish causation given that almost fourteen weeks had elapsed between the March 2020 email exchange and Hall's termination. Courts have repeatedly held that periods greater than three months are too long to establish causation through temporal proximity. *Spitultski v. Board of Education of the*

*Toledo City School District*, 2018-Ohio-3984, 121 N.E.3d 41, ¶ 77-78 (6th Dist.);

*Ningard v. Shin-Etsu Silicones of Am., Inc*., 9th Dist. Summit No. 24524, 2009-

Ohio-3171, ¶ 17 (holding that a plaintiff must generally present additional evidence

beyond temporal proximity to establish causation "where the events are separated

by more than a few days or weeks"); *Woods v. Capital Univ*., 10th Dist. Franklin

No. 09AP-166, 2009-Ohio-5672, ¶ 49-50. *See also Bahar v. Youngstown*, 7th Dist.

Mahoning No. 09 MA 55, 2011-Ohio-1000, ¶ 8.

**{¶21}** In conclusion, Hall has not identified facts in the record that could

establish that a causal connection existed between this allegedly protected conduct

and her termination. Having examined the evidence in a light most favorable to the

nonmoving party, we cannot conclude that the trial court erred in granting summary

judgment in favor of KSM on Hall's claim for retaliation. Accordingly, Hall's first

and second assignments of error are overruled.

*Third Assignment of Error*

**{¶22}** Hall argues that the trial court erred by granting summary judgment

on her wrongful termination in violation of public policy claim.

Legal Standard

**{¶23}** "In Ohio, the common-law doctrine of employment at will governs

employment relationships." *McGlothen v. City of Fairborn*, 2019-Ohio-141, 127

N.E.3d 527, ¶ 12 (2d Dist.), quoting *Dohme v. Eurand Am., Inc*., 130 Ohio St.3d

168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11. Under this doctrine,

> a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages.

*Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 1995-Ohio-135, 652 N.E.2d 653, 656 (1995). However,

> [i]n *Greeley v. Miami Valley Maintenance Contrs., Inc*. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981 the Ohio Supreme Court created an exception to the 'employment-at-will' doctrine by establishing a cause of action for wrongful discharge in violation of public policy as articulated in a specific statute.

*Luginbihl v. Milcor Ltd. Partnership*, 3d Dist. Allen No. 1-01-162, 2002-Ohio-2188, 2002 WL 987853, *3 (May 3, 2002).

> In order for a plaintiff to succeed on a wrongful-termination-in-violation-of-public-policy claim, "a plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ('the clarity element'), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ('the jeopardy element'), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ('the causation element'), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ('the overriding-justification element')."

*House v. Iacovelli*, 159 Ohio St.3d 466, 2020-Ohio-435, 152 N.E.3d 178, ¶ 12, quoting *Miracle v. Ohio Dept. of Veterans Servs*., 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 12. The clarity and jeopardy elements present questions of law while the causation and overriding justification elements present questions of fact. *Collins*, *supra*, at 70.

Legal Analysis

**{¶24}** In her complaint, Hall alleged that the free speech protections in the Ohio Constitution presented a clear public policy that satisfied the clarity element of this claim[5] and quoted the following portion of the Ohio Constitution: "[e]very citizen may freely speak, write, and publish his sentiments on all subjects[, being responsible for the abuse of the right;] and no law shall be passed to restrain or abridge the liberty of speech * * *."[6] (Doc. 1), quoting Article I, Section 11, Ohio Constitution. Thus, the issue in this appeal is whether the free speech protections in the Ohio Constitution provide a basis for the government to insert itself into the relationship between a private employer and an at-will employee.

**{¶25}** In its motion for summary judgment, KSM argued that "Ohio Courts have found that free speech provisions in state constitutions prohibit only state action" and "that absent state action, a *Greeley* claim based on" the free speech protections in the United States Constitution or the Ohio Constitution "must fail." (Doc. 23). In her response, Hall did not direct the trial court to a single case in which a court has held that the free speech protections in the Ohio Constitution can serve as the basis of a wrongful termination in violation of public policy claim.

---

[5] In its motion for summary judgment, KSM argued that Hall failed to establish both the clarity and overriding-justification elements of her wrongful termination in violation of public policy claim. Since the overriding justification element is the subject of Hall's fourth assignment of error, we will only consider the clarity element in our analysis of the third assignment of error.

[6] Hall omitted the portion of Article I, Section 11 that is bracketed in her quotation of this constitutional provision in her complaint.

{¶26} The Ohio Supreme Court has held that a wrongful termination in violation of public policy claim can be brought where the employee's termination "violated the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Ptylinski v. Brocar Prod., Inc*., 94 Ohio St.3d 77, 79, 2002-Ohio-66, 760 N.E.2d 385 (2002), quoting *Painter v. Graley*, 70 Ohio St.3d 377, 1994-Ohio-334, 639 N.E.2d 51 (1994), paragraph three of the syllabus. However, the Ohio Supreme Court has held that the free speech protections in the Ohio Constitution are coterminous with those offered by the First Amendment to the United States Constitution and are, therefore, applicable to state actors. *Stephenson v. Yellow Freight Systems, Inc*., 10th Dist. Franklin No. 99AP-77, 1999 WL 969817, *7 (Oct. 26, 1999), citing *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 222-223, 1994-Ohio-433, 626 N.E.2d 59 (1994).

{¶27} We have found no decision in which the Ohio Supreme Court has held that a wrongful termination in violation of public policy claim can be brought against a private actor on the basis of the free speech protections in the Ohio Constitution in the absence of state action. After considering the issue presently before us, the Tenth District Court of Appeals concluded that a

> wrongful discharge claim * * * based upon the public policy embodied in Section 11, Article I of the Ohio Constitution (freedom of speech) is without merit as the prohibitions contained therein apply only to state action, not the actions of a private citizen or employer.

*Stephenson* at \*7. *See Mitchell v. Mid-Ohio Emergency Services*, L.L.C., 10th Dist. Franklin No. 03AP-981, 2004-Ohio-5264, fn. 4. *See also Shevin v. Pathi*, 3d Dist. Seneca No. 13-02-20, 2002-Ohio-4457, ¶ 12 (holding that, in the absence of state action, constitutional free speech protections could not serve as the basis of an employee's retaliation claim against a private employer).

{¶28} Similarly, after examining Ohio law, the United States District Court for the Northern District of Ohio ("Northern District") also concluded in two different cases that constitutional free speech protections could not serve as the basis of a *Greeley* claim. *Petrovski v. Federal Express Corp.*, 210 F.Supp.2d 943, 948 (N.D. Ohio 2002); *Barnett v. Aultman Hosp.*, N.D. Ohio No. 5:11-CV-399, 2012 WL 5378738, \*6-7 (Oct. 31, 2012) ("[A] public policy wrongful discharge claim predicated upon a constitutional guarantee of Free Speech cannot reach a private employer.").

{¶29} In *Petrovski*, the Northern District also considered the decisions in multiple jurisdictions across the country and concluded that "the 'prevailing view among the majority of courts addressing the issue is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims.'" *Petrovski* at 948, quoting *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 146, 506 S.E.2d 578 (1998); and citing *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 526, 478 N.E.2d 1354 (1985); *Korb v. Raytheon Corp.*, 410 Mass. 581, 584, 574 N.E.2d 370 (1991);

*Prysak v. R.L. Polk Co.*, 193 Mich.App. 1, 10, 483 N.W.2d 629 (1992); *Johnson v. Mayo Yarns, Inc.*, 126 N.C.App. 292, 484 S.E.2d 840, 843 (1997); *Drake v. Cheyenne Newspapers, Inc.*, 891 P.2d 80, 82 (Wyo. 1995). *See also Correa v. Working Families United for N.J.*, D.N.J. No. 16-2217, 2017 WL 5951618, *5 (Nov. 30, 2017).

**{¶30}** In support of her argument, Hall points to the Northern District's decision in *Plona v. U.P.S.*, N.D. Ohio No. 1:06-CV-01144, 2007 WL 509747, *2 (Feb. 13, 2007). In *Plona*, the Northern District of Ohio held that a wrongful termination in violation of public policy claim could be brought against a private employer based upon the Second Amendment in a case where an employee was terminated for "possession of a firearm off of company property * * *." *Id.* at *3. Pursuant to *Plona*, Hall asserts that this Court should take the unprecedented step of holding that the free speech protections in the Ohio Constitution can form the basis of a wrongful termination in violation of public policy claim.

**{¶31}** However, in *Barnett*, the Northern District rejected this suggested application of *Plona*. *Barnett, supra*, at 8. The Northern District stated that its prior decision in *Plona* stood for the proposition "that an employer could not take disciplinary action based upon an employee's off-premises possession of a gun"; did not "ha[ve] anything to do with the First Amendment"; and was "irrelevant" to deciding whether free speech protections could be the basis of a wrongful termination in violation of public policy claim. *Id.* ("Courts must proceed

-18-

cautiously when transforming restrictions on the state to restrictions on private actors.").

**{¶32}** Hall's argument simply cannot overcome the weight of the legal authorities that take the contrary position. Following the general rule, we conclude that, in the absence of state action, the free speech protections of the Ohio Constitution do not provide a basis for Hall, an at-will employee, to raise a wrongful termination in violation of public policy claim in this case against KSM, a private employer. *Stephenson, supra*, at *7; 39 Ohio Jurisprudence 3d, Employment Relations, Section 66 (2023) ("Ohio does not recognize a cause of action for wrongful discharge in violation of * * * the public policies embodied in the right to free speech, in the absence of state action * * *.").

**{¶33}** In conclusion, we have not uncovered a case in which the free speech protections in the Ohio Constitution have been found to provide a legal basis for bringing a wrongful termination in violation of public policy claim against a private employer in the absence of state action. We decline the opportunity to become the first court to reach such a conclusion. As such, Hall cannot establish the clarity element of her wrongful termination in violation of public policy claim in this case. For this reason, we conclude that summary judgment was an appropriate method to dispose of this claim. Accordingly, Hall's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶34} Hall argues that "[t]he trial court erred by finding that it is undisputed that [she] * * * posted a racially inflammatory meme comparing black lives matter protestors, primarily African American, to monkeys * * *." Appellant's Brief, 17.

Legal Standard

{¶35} "Appellate courts are to 'decide each assignment of error' raised on appeal 'unless an assignment of error is made moot by a ruling on another assignment of error * * *.'" *Durfor v. West Mansfield Conservation Club*, 3d Dist. Logan No. 8-21-26, 2022-Ohio-416, ¶ 39, quoting App.R. 12(A)(1)(c). "An issue is moot when it 'involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations.'" *Sullinger v. Reed*, 2021-Ohio-2872, 178 N.E.3d 29, ¶ 52 (3d Dist.), quoting *Culver v. City of Warren*, 84 Ohio App. 373, 83 N.E.2d 82 (7th Dist. 1948), quoting Borchard, Declaratory Judgments, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sullinger* at ¶ 52, quoting *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 26.

Legal Analysis

{¶36} On appeal, Hall argues that the post she made was "not racist" but was "political commentary * * *." Appellant's Brief, 20. However, even if an issue of fact did exist as to whether Hall's post was racist, our resolution of the third

assignment of error means that Hall still could not establish a claim for wrongful termination in violation of public policy.  This renders moot the arguments raised herein about the nature of Hall's Facebook post.   As such, we decline to address the arguments raised in Hall's fourth assignment of error pursuant to App.R. 12(A)(1)(c).

*Conclusion*

{¶37} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Auglaize County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**